Good morning, Your Honors. May it please the Court, thank you for this opportunity and I will attempt to reserve two minutes for rebuttal please. This is a very unique case, Your Honors. It's pretty much confined to its unique facts and specifically the petitioners are a very devout husband and wife, Catholic couple who are unable to conceive a child through any other means except in vitro fertilization which is expressly prohibited by the dictates of the Catholic Church. Counsel, right at the outset I think that I have to ask you, what was the purpose of this statute that allows certain immigrants to remain in this country if there's extreme hardship for a U.S. citizen? Your Honor, the cancellation statute is an ameliorative statute. For the children or the other relatives that are citizens, it's not really for the, it may be used in some fashion for the benefit of immigrants, but its purpose and its function is in those exceptional circumstances to protect the American citizens. And there's nothing in this record that could possibly suggest that your clients can rely on that. Well, Your Honor, but I think you also have to take into consideration the countervailing statute which is the Religious Freedom Restoration Act which was expressly passed in order to prevent government from substantially burdening. Yes, but what Judge Fletcher is saying is that the statute must change in 1996 so that extreme hardship to the individuals is not the standard anymore. I mean, whether that's good or bad is another question, but no one's concerned about the individuals. We're concerned about the American citizen relatives. If there is no American citizen relative, what is the pertinence of their problem? Well, I mean, its purpose is also to maintain family unity as well. Right. And there is no, with this child that doesn't exist. Well, that's true, but I think that's part of the point. The child doesn't exist because in this case the statute in it is that because the standard is now extreme and exceptionally unusual hardship, essentially having, I mean, certainly having an American citizen child is not going to help them. They really have to have a sick or troubled or otherwise specially difficult American citizen child, right? Well, that's true, but that's the specific provision that we allege is a violation of the Petitioner's exercise of their religion. I'm sorry. I'm not understanding that. In other words, they certainly don't want to have a sick child. They want to have a healthy child, right? If they have a healthy child, they're not going to be able to stay here. Well, I think the point is they're never going to be able to have a child because they're never going to be able to have a child. I understand that. Right. Well, if they're never going to be able to have a child, then they're not going to be able to stay here. Well, that's not even true either. They could adopt a child. Well, that's true, and I think that goes to the subset of people whose religion is burdened. I mean, if this couple, the Petitioners, were an infertile Protestant couple, there wouldn't be a burden on their religion. It's only on Catholic couples. But the only burden on their religion is that they have difficulty in taking the chance that they might have a very sick child. I mean, I don't understand, given the fact that having a child will not give them the benefit. They can't get the benefit just from having a child. So therefore, the discouragement of having a child or not having a child doesn't seem to be connected to what, to the benefit they want. But it's essentially conditioning eligibility for this benefit on having a child, whether it's sick or not. No, because having a well child isn't going to do it. Well, that's true, but it's still a condition on eligibility in this case, just as in Scherber v. Verner. What if there were no exception in the statute? You wouldn't be here, is that right? No exception in terms of? If there was no exception for a situation where there was extreme hardship for an American citizen, if that weren't in the statute, you wouldn't be here, is that right? Well, if the statute did not have the requirements of having a qualifying relative, we would not be here, yes, Your Honor. That's correct. I mean, essentially, I mean, our position is that the cancellation statute in this case, in effect, penalizes them for their refusal to violate. The problem is you have very appealing clients who seem like they're very nice people and who unfortunately came here without permission and have set up exemplary lives in the meanwhile, and we just don't have a scheme for that, which maybe we should, but we don't seem to have one. Well, but I think Riffer does address the situation. I mean, as the Court in Scherber v. Verner says, you can't condition eligibility for benefits on someone's refusal to violate one of the precepts of their religion. As the Court said, to condition the availability of benefits upon this appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties. I mean, it seems to me that what you're getting at is the size of the subsect whose religion is burdened. In this case, it's a very small subset. It's only Catholic couples who are infertile and who also don't happen to have other qualifying relatives, such as a parent or a spouse. I mean, if, for example, it was a Catholic priest who was in removal proceedings, he's never going to be able to demonstrate hardship to a child or a spouse because he's never going to have a child or a spouse. It seems to me in that situation, Riffer does allow for an exemption from that specific offensive provision in the statute. I mean, to get on to the compelling governmental interests, if I may, the government says that the government does have a compelling interest in implementing and enforcing the immigration laws, but in Gonzales v. El Centro, the Court said that that was not enough. The Court said that the strict scrutiny test and Riffra contemplated an inquiry more focused than the government's categorical approach. So I don't think that merely saying that the government has an interest in enforcing immigration laws is sufficient to overcome the burden. Well, that may be. I mean, if, for example, they said that you can only stay in this country if you didn't go to mass, that would be a different problem. But that's not what's going on here. Right. But that's the purpose of Riffra, is that it doesn't have to be directed toward religion. It's a facially neutral statute. The statute says you just have to show heart to the qualifying relative. It doesn't matter what religion you are, you still have to meet that. But in this specific circumstance, and I think that Riffra does oblige the Court to look specifically at this specific petitioner and the burden on this specific petitioner, they can never have a qualifying relative. And I think that, I mean, the statute itself says that the Court has to, that the government can only burden religion if the government demonstrates the burden to the person. And in this case, admittedly, it's a very unique circumstance. But that doesn't take away from the fact that it's a burden. It's only a burden on a very small subspecies of religious people, i.e., those people who are Catholic, infertile, and who don't have any other qualifying relative. Their explanation of why they didn't adopt a child was because the child, because they have an unstable situation in this country. But, of course, that equally applies to having a natural child as well. So was that – what kind of an explanation is that? Well, no. But, I mean, again, I don't think you're focusing on the fact that it's a burden on this specific religion. The fact that there's no – But why – why is it a burden when they could adopt a child? Well, it's not a burden in that case. But it's a burden if they have – if they can't have. Right. They say the problem – I mean, even if you buy the whole rest of it, which is difficult, it isn't even true that they can't have a child, because the – an adopted child would be recognized. So they could adopt a child. That's true. But that – that essentially shifts the burden to us to prove that there's some other means for us to qualify under this. Well, there is another means. We have to prove – I mean, it doesn't matter. I mean, the government has said it. There's obviously another means. So what's the answer to that? Well, the answer to that is that it's still a burden on religion. Why? I mean, well, it's still a burden because it still affects – because they can't have a qualifying relative. They can't have a qualifying relative if they can adopt a child. Right. But it's still – I mean, that still goes to the size of the group that's being burdened. I mean, the fact that there's some other means for them to qualify doesn't take away from that. I mean, the statute also provides that you could have a parent or a spouse. I mean, in theory, they could divorce and marry a U.S. citizen, or they could be adopted by a U.S. citizen, in which case they'd have a qualifying parent. But I don't think that takes away from the matter. Okay. Your time is very close, John. Thank you. If it pleases the Court, my name is Don G. Scroggin, and I represent the United States Attorney General in this case. Petitioners, in order to prevail in this case, must demonstrate a substantial burden directly upon their religious beliefs. In this case, the Board properly found that they had failed to demonstrate that the cancellation statute either prohibited any activity or mandated any activity in conflict with their religion. Well, that's not necessarily the standard, because of the government, because Sherbert still put laws, so. That's correct, Your Honor. And Sherbert is similar to this case in that in Sherbert, the government is reaching out to people in difficult circumstances and offering a benefit, not a penalty. In the Sherbert case, for example, it was dealing with unemployment compensation. But nevertheless, the government mandated a direct behavior on the part of people who were to benefit by receiving unemployment compensation. They must work on a Saturday. And that conflicted with some people's religious beliefs. Here, there's no such requirement. That's what I'm saying. There is rather an implicit incentive. Petitioners' argument is essentially that when the government reaches out in its largesse to help and assist, in this case, aliens who find themselves, through no fault of their own, in difficult circumstances by offering cancellation, that it can, by premising the receipt of those benefits upon qualifications, eligibility qualifications, that it will create somehow implicit incentives on the part of certain aliens to arrange their affairs like a recipe in order to qualify for those benefits. Well, suppose the statute provided that anybody with an American citizen child would not be removed. That would be one extreme circumstance where the – I was going to say that this statute does not directly mandate children. If it did, I would say that that is not going to ban – going to prohibit or require any behavior in conflict with their Moreover, even stronger argument for adoption is insofar as they must have hardship in addition to a child, it is much more likely that they could adopt a child with the requisite hardship, such that it required, for example, a unique medical problem for which treatment was available only in the United States, or that it had special extenuating learning circumstances, both of which have been found under some cases to qualify for the exceptional and extremely unusual hardship that's required for the qualifying relative in order for the aliens to benefit. Insofar as adoption is an option, it is the preferable option because, as Your Honor pointed out, having one's own child does not guarantee having a child in any way that would have the requisite hardship in order to achieve the result of receiving cancellation. I would say that any burden So the way you translate that, you say, well, it's not a substantial burden because nobody in their right mind would make a decision whether to have a child or not have a child based on whether they're going to get cancellation or removal, given that it's a complete – that it's very, very, very unlikely they will. I would suggest that's correct, Your Honor. But I wouldn't – I think that it's in order to determine that any burden placed upon the exercise of religion of this couple is remote at best. It is attenuated first because the government does not mandate that they must have a child. They – it does not require any particular behavior. This is in contrast to, example, the Sherbert case where it required working on a Saturday. Here there are many ways one could qualify for cancellation. There's no specific activity that's mandated. And second, there are – there is an alternative mechanism by which they can achieve cancellation, and that is by adoption, as you pointed out, even if the government did mandate that they have children. Second, there's been no showing whatsoever of the requisite hardship here, nor did – and that hardship is required. Petitioners have made no showing as to how they must – they must do that. This Court has held, for example, in the case of Vasquez, that the mere existence of a U.S. citizen child is insufficient. Moreover, the deportation of a U.S. citizen child without more is insufficient to show the exceptional and extremely unusual hardship that's required for cancellation. In essence, for petitioners to prevail in this case, this Court would have to hold that any time the government reaches out in its largesse to assist people in difficult circumstances, one might look to the Katrina victims recently, for example, providing free housing or subsidized housing to Katrina victims, but requiring that there be certain eligibility requirements in order to receive that benefit from the government. Petitioners' argument is essentially that some people might be tempted to engage in activity in order to meet those eligibility requirements, such as lying about their house if lying were against their religion, lying saying that their house was destroyed by Katrina when it wasn't, or that perhaps their house wasn't destroyed at all by Katrina and they destroyed it themselves because they wanted a new house, and that lying is against their religion. Then any government program reaching out to help people in distress that has eligibility requirements might provide the kind of indirect incentives, implicit incentives that petitioners argue guide their behavior here and conflict with one's religion. If lying were against one's religion and in order to receive benefit for Katrina, one had to allege in an application that you had your house had been so destroyed, then you would have a claim, according to petitioners' theory, that the petitioner had demonstrated a burden. Moreover, even if, and Respondents would not concede that petitioners have demonstrated a burden, even if they had demonstrated a burden, this Court has held that in order to succeed in a claim dealing with the interference with religion, one must also demonstrate that there's no compelling governmental interest. Here the governmental interest in implementing uniformly the immigration laws is well recognized, and finally, they would have to demonstrate that there's no alternative, that there's no, that this, that this cancellation statute is not narrowly prescribed in order to address this particular problem. There's been no showing on any of those fronts. Respondents would simply state that a burden must be demonstrated, no burden has been demonstrated, that a burden that might be implicit is so attenuated by the indirect nature that it simply does not qualify. Thank you very much. Thank you. You have about 20 seconds or something. Okay. I mean, I think that the, I mean, there is a burden on a very small group of people here, and the burden is that they cannot qualify for this benefit unless they violate the mandates of their religion. And I think that's the point of the referent. And I think it's just as Julia said, in Gonzalez v. Zintra, you can make an exception without the sky falling, and I think that it can be done here. Thank you very much. The case of Fernandez v. Mukasey is submitted, and we are in recess until tomorrow morning. Thank you very much. Good job. Thank you. Thank you. Oh, we will? Well, I just may want to kick everything and everything. Hey, I forgot something. I have an item. Thank you.  Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Okay. It's like, this is really moving. Oh. Oh, no. Okay. Thanks again for your help on that one case. I didn't think of you this morning because I was with practice all day. But thank you so much for coming here. Yeah, well, I understand. So, we deal with document issues. Okay. Yeah, have a good day. It was great that you came up because I was just thinking of you coming up so I could introduce myself since I was going to be here. Yeah. Bye. Bye. Bye.
judges: Fletcher, Berzon, Rawlinson